1  **WO**

2

3

4

5

6  **IN THE UNITED STATES DISTRICT COURT**

7  **FOR THE DISTRICT OF ARIZONA**

8

9  Ryan W. Buckman,                    )    No. CV-06-2005-PHX-DGC (JJM)
                                       )
10        Plaintiff,                   )    **ORDER**
                                       )
11  vs.                                )
                                       )
12  MCI World Com,                     )
                                       )
13        Defendant.                   )
                                       )
14 _____ )

15        Defendant has filed a motion for summary judgment.  Dkt. #99.  For the reasons set

16  forth below, the Court will grant the motion.[1]

17  **I.    Background.**

18        On May 24, 1999, Plaintiff Ryan W. Buckman began working for Defendant MCI

19  World Com as a telemarketing sales representative.  *See* Dkt. #102 ¶4.  Plaintiff was

20  terminated on July 12, 1999 for "job abandonment after he failed to report to work."  *Id*.

21        Plaintiff rejoined Defendant's company on February 19, 2003. Dkt. #100 ¶1. He was

22  diagnosed with Hepatitis C in June of 2003. Dkt. #100 ¶32.  The parties agree that during

23  his second tour of duty with Defendant, Plaintiff received numerous warnings for attendance

24  and disciplinary problems.  *See, e.g.*, ¶¶13-14.  The parties further agree that for medical

25  reasons Defendant changed Plaintiff's work schedule and the sales team to which he

26  _____

27        [1]Defendant's request for oral argument is denied because the parties have thoroughly
    briefed the law and evidence and oral argument will not aid the Court's decision. *See Mahon*
28  *v. Credit Bur. of Placer County, Inc.*, 171 F.3d 1197, 1200 (9th Cir. 1999).

1  belonged (*see* Dkt. #100 ¶¶8-10, 30), and granted Plaintiff's requests for intermittent leave

2  under the Family and Medical Leave Act ("FMLA") (*see id.* ¶7).

3  Plaintiff was on approved intermittent FMLA leave for two weeks from Monday,

4  April 5, through Friday, April 9, 2004, and from Monday, April 12, through Friday, April 16,

5  2004. *See* Dkt. #127-8 at 5.  The following Monday, April 19, 2004, Plaintiff did not report

6  for work and his absence was recorded as "unexcused." *See* Dkt. #102 ¶7.  Plaintiff failed

7  to appear for work the next day and did not call to report that he would be absent.  *See id*;

8  Dkt. #100 ¶22.

9  On April 21, 2004, after meeting with Plaintiff and Plaintiff's supervisor, senior

10  manager Jerry Ulibarri suspended Plaintiff effective immediately.  Dkt. #105 ¶3.  Ulibarri

11  terminated Plaintiff effective April 23, 2004.  *Id.* at ¶4.

12  Plaintiff again applied for employment with Defendant in February of 2005.

13  Dkt. #100 ¶46. According to Defendant, Plaintiff was not rehired because he failed to

14  disclose prior criminal convictions.  *Id.*

15  Plaintiff has been incarcerated since May 17, 2005.  *Id.* at ¶41. On August 25, 2005,

16  Plaintiff was indicted on three counts of first degree murder, three counts of armed robbery,

17  and one count of burglary in the first degree.  Dkt. #106-2 Ex. 13.  He currently is

18  incarcerated in Maricopa County Jail awaiting trial on these charges.  *See id*.

19  Plaintiff filed an amended *pro se* complaint in which he alleges that he was terminated

20  in retaliation for exercising his rights under the FMLA and in violation of the Americans with

21  Disabilities Act ("ADA"). Dkt. #28.[2]  The parties have fully briefed Defendant's motion for

22

23  [2]Defendant appears to be under the impression that Plaintiff's complaint includes a
claim that Defendant wrongfully failed to rehire him. *See* Dkt. #99.  Even with a liberal
24  reading of Plaintiff's complaint, the Court finds that Plaintiff asserts only two causes of
action, both of which relate to his August 23, 2004 termination, not his 2005 attempt to be
25  rehired by Defendant. *See* Dkt. #28 at 8 (alleging only that Defendant violated the FMLA
and the ADA "when they improperly *fired* me . . . in retaliation for" exercising his FMLA
26  rights and his disability status) (emphasis added).  The FMLA requires employers to reinstate
27  an employee to his or her former position or an equivalent position following the employee's
28  timely return from FMLA leave. 29 U.S.C. § 2614(a)(1).  But Plaintiff's complaint does not

1   summary judgment.  Dkt. ##99, 127, 134.[3]

2   **II.     Summary Judgment Standard.**

3   Summary judgment is appropriate if the evidence, viewed in the light most favorable

4   to the nonmoving party, shows "that there is no genuine issue as to any material fact and that

5   the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Only disputes

6   over facts that might affect the outcome of the suit will preclude the entry of summary

7   judgment, and the disputed evidence must be "such that a reasonable jury could return a

8   verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

9   (1986).  Summary judgment may be entered against a party who "fails to make a showing

10  sufficient to establish the existence of an element essential to that party's case, and on which

11  that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

12  (1986).

13  The Court is mindful that Plaintiff is proceeding *pro se* and is incarcerated.  "*Pro se*

14  prison inmates, with limited access to legal materials, occupy a position significantly

15  different from that occupied by litigants represented by counsel."  *Jacobsen v. Filler*, 790

16  F.2d 1362, 1365 n.4 (9th Cir. 1986) (citation omitted).  Courts have a duty to liberally

17  construe the pleadings of *pro se* litigants, particularly those filed by *pro se* prisoners.  *See*

18  *Zichko v. Idaho*, 247 F.3d 1015, 1020 (9th Cir. 2001).  *Pro se* litigants are nonetheless bound

19  by "the same rules of procedure that govern other litigants," *King v. Atiyeh*, 814 F.2d 565,

20  567 (9th Cir.1987), including Rule 56's requirement that a non-moving party "must present

21

22  allege as a basis for relief Defendant's failure to reinstate him following his return from
    approved leave on April 19, 2004.  Accordingly, the Court will not address Defendant's
23  arguments with respect to their refusal to rehire or reinstate Plaintiff.

24  [3]The Court notes that documents submitted with Plaintiff's statement of facts are
25  voluminous (some 800 pages), poorly cited, and without sequential page numbers or any
    discernable order.  Where a non-moving party's papers are "extraordinarily difficult to use"
26  due to their size and unhelpful citations, a court is not required to scour those papers in
27  search of a genuine issue of material fact.  *Keenan v. Allan*, 91 F.3d 1275, 1278-79 (9th Cir.
    1996).  As Plaintiff is proceeding *pro se*, however, the Court has undertaken significant
28  efforts to locate relevant documents cited in Plaintiff's statement of facts.

- 3 -

1  some significant probative evidence tending to support the complaint" in order to survive

2  summary judgment. *Franklin v. Murphy*, 745 F.2d 1221, 1235 (9th Cir.1984) (citation and

3  internal quotes omitted).

4  **III.    FMLA Claim.**

5        **A.    Legal Standard.**

6        "Congress enacted the FMLA to allow workers flexibility in scheduling time off to

7  deal with family and medical problems and alleviate some of the tension created by the

8  competing demands of work and family in modern society." *Scamihorn v. Gen. Truck*

9  *Drivers*, 282 F.3d 1078, 1082 (9th Cir. 2002). Plaintiff alleges that he was terminated in

10  retaliation for taking FMLA leave. Dkt. #28. Under the FMLA, it is "unlawful for any

11  employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any

12  right provided" by the statute. 29 U.S.C. § 2615(a)(1). The Ninth Circuit has held that

13  "visiting negative consequences on an employee simply because he has used FMLA leave"

14  is not considered retaliation, but "[s]uch action is, instead, covered under § 2615(a)(1), the

15  provision governing 'Interference [with the] exercise of rights.'" *Bachelder v. America West*

16  *Airlines,* 259 F.3d 1112, 1124 (9th Cir. 2001). Accordingly, the Court will treat Plaintiff's

17  allegation as one of interference with his FMLA rights. *See Xin Liu v. Amway Corp.*, 347

18  F.3d 1125, 1134 n.8 (9th Cir.2003) (applying the FMLA interference provision where the

19  plaintiff mistakenly alleged retaliation).

20        Defendant argues primarily that Plaintiff was terminated as a result of his failure to

21  abide by Defendant's call-in procedures and specifically that his April 19, 2004 absence was

22  his "last straw." Dkt. #99. Defendant contends that dismissal of Plaintiff's FMLA cause of

23  action is appropriate in part because Plaintiff cannot demonstrate that this legitimate, non-

24  discriminatory reason was pretextual. *Id*. But the Ninth Circuit has rejected the notion that

25  the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973),

26  applies to an FMLA interference claim. *See Xin Liu*, 347 F.3d at 1136. To prevail on a claim

27  under § 2615(a)(1), Plaintiff must establish by a preponderance of the evidence that (1) he

28  took FMLA-protected leave, (2) he suffered an adverse employment action, and (3) the

- 4 -

1  adverse actions were causally related to his FMLA leave. *See Bachelder,* 259 F.3d at 1124-

2  26.[4]

3      The parties do not dispute that Plaintiff took FMLA leave (*see* Dkt. #127-8 at 5) and

4  was subjected to an adverse employment action (*see* Dkt. #100 ¶24).   The parties focus

5  instead on the third element – the existence of a causal link between Plaintiff's leave and his

6  termination.  To establish causation, a plaintiff "need only prove by a preponderance of the

7  evidence that [his] taking of FMLA-protected leave constituted a negative factor in the

8  decision to terminate [him]." *Bachelder,* 259 F.3d at 1124.  "[R]equiring a showing that the

9  protected activity constituted a negative factor in an adverse employment decision is another

10  way of stating that there must be some causal connection between the FMLA right and the

11  employment decision." *Hambright v. Potter*, No. 05-1302, 2007 WL 1101262, at \*7 (D.

12  Ariz. Apr. 12, 2007).

13      **B.**    **Plaintiff's History of Attendance and Disciplinary Problems.**

14      Defendant asserts that Plaintiff had a history of disciplinary problems by the time of

15  his termination.  Specifically, Defendant asserts that Plaintiff was warned (1) on April 3,

16  2003, for calling in sick when he had no accrued sick time; (2) on April 7, 2003, for

17  mimicking customers in sales calls; (3) on April 18, 2003, for calling in sick when he had no

18  accrued sick time; (4) on July 25, 2003, for calling in sick when he had no accrued sick time;

19  (5) on July 31, 2003, for not calling in prior to his shift to notify his supervisor that he would

20  be late; (6) on September 30, 2003, for assuring a customer that he was eligible for a service

21  that was not available to him; and (7) on January 6, 2004, for not reporting to work on

22  November 10 and 11, 2003, and January 2, 2004.  Dkt. #100 ¶¶13-14.  Plaintiff does not

23  dispute these assertions.  Dkt. #127 ¶¶13-14.

24      Plaintiff also received a warning on January 7, 2004, for failing to call in before

25  missing his shift.   Dkt. #100 ¶15.   This warning notes the previous occurrences on

26

27      [4] The *McDonnell Douglas* framework does apply in FMLA cases where an "employee
is punished for *opposing* unlawful practices by the employer." *See Xin Liu*, 347 F.3d at 1136

28  (emphasis in original).  Plaintiff makes no such claim in this case.

1  November 10 and 11, 2003, and January 2, 2004, and states, "Per attendance guidelines that

2  [Plaintiff] received during his initial training, he must call at least 2 hours prior to shift." *Id*.

3  Plaintiff does not deny that he received this warning or its language.  Dkt. #127 ¶15.  He

4  instead asserts that the warning was not warranted because he had been trained in February

5  of 2003 that he must call in only during the first hour of his shift, not before the shift, and had

6  never agreed to be bound by a policy requiring him to call in two hours before the shift. *Id*.

7  Plaintiff does not contend that the warning was given on the basis of his FMLA leave.

8         Plaintiff received another warning on February 20, 2004, for failing to return to work

9  after lunch on February 13, 2004.  Dkt. #100 ¶16.  Plaintiff does not dispute that he received

10 this warning, but instead argues that the warning was not warranted.  Dkt. #127 ¶16.  Plaintiff

11 asserts that he had medical permission to be absent and that Defendant afforded him FMLA

12 leave that day.  He asserts that the person who issued the warning was not aware of these

13 facts.  *Id*.  He does not claim that the warning was issued because of his FMLA leave.  *Id*.

14        Plaintiff received another warning on March 16, 2004, for submitting the same sale

15 twice to be counted toward his quota.  Dkt. #100 ¶17.  Defendant does not dispute that he

16 received the warning, but again claims it was unjustified.  Dkt. #127 ¶16.  Plaintiff does not

17 contend, however, that the warning was tied to his taking FMLA leave.  *Id*.

18        On April 15, 2004, Plaintiff received what was labeled a "final warning" because he

19 changed a customer's service immediately after telling the customer he would wait before

20 making the change.  Dkt. #100 ¶18.  Plaintiff does not dispute that he received the warning,

21 nor that it was labeled a "final warning," but asserts that it was unjustified because he did not

22 make a promise to the customer and did not control the timing of her change.  Dkt. #127 ¶18.

23 Plaintiff notes that this warning was placed in his file on a day while he was on FMLA leave,

24 but does not assert that it was issued or placed in his file because of the leave.  *Id*.

25        Several of these warnings specifically advised Plaintiff that he would face termination

26 if he had other infractions.  For example, at least seven warnings stated that "[f]uture

27 occurrences may result in further corrective action up to and including termination."

28 Dkt. #101 Ex. 2 at 2, 4, 6, 7; Ex. 3 at 1, 2.  The January 6, 2004 warning for failure to report

1  to work on three days stated that "[i]f employees do not meet the company's expectations of

2  performance and/or conduct, corrective action, including discharge, may be taken."

3  Dkt. #101, Ex. 2 at 5.

4  **C.      Plaintiff's Attendance on April 19, 2004.**

5  As noted above, Plaintiff received two weeks of pre-approved FMLA leave that ended

6  on Friday, April 16, 2004. *See* Dkt. #127-8 at 5. Defendant asserts that Plaintiff was

7  scheduled to return to work on Monday, April 19, 2004. Dkt. #100 ¶20. The parties agree

8  that Plaintiff did not appear for work that day. *See* Dkt. #100 ¶¶20-21; Dkt. #127 ¶¶20-21.

9  Plaintiff called at 9:48 a.m. that morning to inform his supervisor that he would be absent.

10  *Id*. Plaintiff also failed to appear for work the next day, April 20, 2004. Dkt. #100 ¶22; #127

11  ¶22. Plaintiff did not call to say he would be absent that day. *Id*.

12  Plaintiff admits that it was Jerry Ulibarri, the senior manager at Defendant's facility,

13  who suspended Plaintiff on April 21 and terminated him on April 23. Dkt. #100 ¶24; #127

14  ¶24. Significantly, Plaintiff also admits that Ulibarri did not know about Plaintiff's illness

15  or his use of FMLA leave. *See* Dkt. #127 ¶23. Defendant has submitted an affidavit from

16  Ulibarri stating that Plaintiff was terminated because he failed to call in before his shifts on

17  April 19 and 20, failed to report to work on April 19, and had received many previous

18  warnings, including a final warning. Dkt. #105 ¶4. Plaintiff provides no evidence to dispute

19  these reasons. Dkt. #127 ¶25.

20  Plaintiff instead asserts that he was not required to work on April 19 or 20. Dkt. #127

21  ¶20. Plaintiff fails, however, to submit admissible evidence in support of this assertion.

22  Plaintiff provides no affidavit or declaration to support his claim. He cites to portions of his

23  deposition, but does not attach the cited pages and they are not included in excerpts supplied

24  by Defendant. Plaintiff cites to a number of requests for admissions and interrogatory

25  answers, but only one of them addresses his obligation to attend work on April 19 and 20 –

26  Defendant's admission that "Plaintiff claims to have submitted a doctor's note purporting to

27  excuse Plaintiff for April 19 and 20 due to liver issues." Dkt. #127-8 at 6-7. The doctor's

28  note states that Plaintiff was under the doctor's care on April 20. Dkt. #128-7 at 2. Although

- 7 -

1  cryptic, the note could be read to suggest that Plaintiff had liver problems on April 19 as well

2  (although it says he was under the doctor's care only on April 20).  Plaintiff fails, however,

3  to provide any evidence that the note would be admissible at trial.  *Id*.  He does not attach a

4  declaration from the doctor or explain how the note was obtained, and he apparently never

5  asked Defendant to admit its authenticity or admissibility.[5]

6        Plaintiff also points to Defendant's employee handbook, which states that an

7  employee on FLMA leave must provide a medical release from his or her physician when

8  returning to work.  *See* Dkt. #128-10 at 5, 7.  Plaintiff suggests that this provision excused

9  him from attending work on April 19 and 20 because he had not provided Defendant with

10  a medical release.  But the provision does not say that employees are free to miss work until

11  they provide a release.  The clear meaning of the policy is that employees must bring a

12  release when returning to work as scheduled, not that they have a free pass to miss work until

13  they elect to produce a release.  *Id*.

14        In addition to the fact that Plaintiff has provided no admissible evidence to support

15  his assertion that he was not required to work on April 19 and 20, the existing evidence

16  suggests otherwise.  For example, if Plaintiff had pre-approved FMLA leave on April 19 as

17  he claims, why did he call his supervisor at 9:48 a.m. that day (as he admits) to say he would

18  not appear for work? *See* Dkt. #100 ¶21; #127 ¶21.  Plaintiff himself asserts that he was not

19  required to call in on pre-approved FMLA days.  Dkt. #127-7 at 12.

20       **D.**    **FMLA Conclusion.**

21        The uncontroverted evidence shows that Plaintiff received at least 11 warnings in the

22  months before his termination, including warnings that specifically advised him of his

23

24

---

25       [5] Defendant's reply specifically asks the Court to disregard over 800 pages of

26  allegedly inadmissible evidence submitted by Plaintiff, especially unauthenticated medical records and opinions.  *See* Dkt. #134 at 6-7.  Given this objection and Plaintiff's failure to

27  provide any basis for the note's admissibility, the Court will disregard it.  *See* Fed. R. Civ. P. 56(e)(1) (evidence submitted in connection with summary judgment motion must be

28  "admissible in evidence"; documents must be "sworn or certified").

1   obligation to call in before his shift on days when he would miss work.[6]  Plaintiff received

2   a "final warning" on April 15.  He was scheduled to work on April 19 and 20, but called in

3   late on the 19th, did not call at all on the 20th, and failed to appear for work on both days.

4   Plaintiff was then terminated by a senior manager who Plaintiff admits did not know about

5   his health problems or his FMLA leave.

6         Given these undisputed facts, the Court concludes that Plaintiff has failed to come

7   forward with sufficient evidence of causation – that his FMLA leave was a negative factor

8   in his termination.  As noted earlier, summary judgment may be entered against a party who

9   "fails to make a showing sufficient to establish the existence of an element essential to that

10  party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477

11  U.S. at 322.  Moreover, the disputed evidence must be "such that a reasonable jury could

12  return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.   Plaintiff has

13  presented no evidence from which a reasonable jury could find in his favor on the issue of

14  causation.  The Court accordingly will enter summary judgment on Plaintiff's FMLA claim.[7]

15  **IV.   ADA Claim.**

16        The ADA forbids employers from discriminating against a qualified individual with

17  a disability, on the basis of the disability, "in regard to . . . [the] terms, conditions, and

18

19

20        [6] Plaintiff argues that he never agreed to be bound by a policy requiring him to call
    in his absences before his shift started, and that he therefore was required to follow only the
21  February 2003 training that said he could call in during the first hour of his shift.  But
    Plaintiff cites no authority, legal or factual, for the proposition that he was obligated to
22  follow only those policies of his employer with which he agreed.  And he does not dispute
    that warnings he received before his termination specifically advised him of the obligation
23  to call in before his shift.  *See, e.g.,* Dkt. #101 Ex. 2 at 6; Dkt. #102 Ex. 7 at 3.

24
        [7] The Court is aware of the temporal proximity between Plaintiff's return from FMLA
25  leave and his termination.  Plaintiff does not urge this as a basis for proving causation.  More
    importantly, although "[t]emporal proximity between protected activity and an adverse
26  employment action can by itself constitute sufficient circumstantial evidence of retaliation
    in some cases," *Bell v. Clackamas County*, 341 F.3d 858, 865 (9th Cir.2003), the Court finds
27  that no reasonable jury could find causation in this case given the uncontroverted evidence
28  recited above, even considering the timing of Plaintiff's termination.

1    privileges of employment." 42 U.S.C. § 12112(a). An employee alleging ADA

2    discrimination bears the burden of proving that he is "disabled" within the meaning of the

3    statute. *See Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 988 (9th Cir. 2007). "[A]n

4    individual is disabled if that individual (1) has a physical or mental impairment that

5    substantially limits one or more of the individual's major life activities; (2) has a record of

6    such an impairment; or (3) is regarded as having such an impairment." *Coons v. Sec'y of*

7    *U.S. Dept. of Treasury*, 383 F.3d 879, 884 (9th Cir. 2004).

8    **A.    Is Plaintiff Disabled?**

9        To qualify as disabled under the first definition of disability, a plaintiff must prove

10   (1) he has a physical or mental impairment, (2) the impairment limits a major life activity,

11   and (3) the limitation upon that activity is substantial. *See Toyota Motor Mfg., Ky., Inc. v.*

12   *Williams*, 534 U.S. 184, 194-95 (2002). Plaintiff asserts that he has chronic Hepatitis C and

13   that he has problems associated with mental illness and his neurological, cardiovascular,

14   reproductive, digestive, hemic, lymphatic, and immune systems. Dkt. #127 at 15. Whether

15   Plaintiff is actually disabled, however, depends not on a diagnosis of an impairment or the

16   type of symptoms, but on an individualized inquiry into whether Plaintiff has an impairment

17   that substantially limits a major life activity. *See Toyota Motor Mfg.*, 534 U.S. at 198 ("It is

18   insufficient for individuals attempting to prove disability status under this test to merely

19   submit evidence of a medical diagnosis of an impairment.").

20       At the outset, the Court notes that Plaintiff does not dispute that he was "almost

21   cured" of his Hepatitis C as of April 20, 2004. Dkt. #100 ¶35; #127 ¶35. Plaintiff

22   nonetheless argues that he was disabled. He contends, for example, that his "food does not

23   digest the same as normal people[.]" Dkt. #127 at 15. But the ADA requires Plaintiff "to

24   prove a disability by offering evidence that the extent of the limitation in terms of [his] own

25   experience . . . is substantial," not information on his condition relative to others.

26   *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 567 (1999). Plaintiff states that he vomits,

27   has fevers, and is fatigued. Dkt. #127 at 15. An ADA plaintiff's limitations must, however,

28   be tied to a major life activity. *See Toyota Motor Mfg*, 534 U.S. at 194-95. Aside from

1  eating, Plaintiff does not tie these limitations to a major life activity. *See id.* Nor does

2  Plaintiff direct the Court to evidence that these limitations significantly impaired the major

3  life activity of eating. For example, there is no evidence that he suffered these limitations

4  in the long-term. *See id.* at 198 ("[t]he impairment's impact must . . . be permanent or long

5  term.").

6  Plaintiff also notes that he takes Interferon for his Hepatitis C, which leads to side

7  effects for which he was hospitalized and prescribed medicine. Dkt. #127 at 16. He also

8  claims to receive other treatment for his symptoms. *Id.* at 18. But Plaintiff does not

9  demonstrate that the side effects of the medication impair a major life activity. *See Toyota*

10  *Motor Mfg.*, 534 U.S. at  198. Moreover, he does not explain whether he experiences a

11  substantially limiting impairment after taking his medications or receiving his treatment. *See*

12  *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482 (1999) ("if a person is taking measures

13  to correct for, or mitigate, a physical or mental impairment, the effects of those measures –

14  both positive and negative – must be taken into account when judging whether that person

15  is 'substantially limited' in a major life activity and thus 'disabled' under the [ADA].").

16  Plaintiff contends that he was substantially limited in his ability to reproduce for a

17  period of twelve months. Dkt. #127 at 16. Reproduction is a major life activity. *See*

18  *Bragdon v. Abbott*, 524 U.S. 624, 638 (1998). At the same time, however, Plaintiff states

19  that he "sometimes" has a "normal sex life" and a "few months" following his termination

20  he had a "pretty normal" sex life. Dkt. #106-3 at 156:19-21, 157:5-11. Plaintiff has not

21  submitted evidence from which a reasonable jury could conclude that he is substantially

22  limited in the major life activity of reproduction.

23  With respect to having a record of a disability, Plaintiff states that he has "medical

24  records of an impairment" (Dkt. #127 at 14), but he does not point the Court to records of an

25  impairment that substantially limits a major life activity. The evidence furnished by Plaintiff,

26  if admissible, could support a finding that he has had difficulties and restrictions, but they

27  do not rise to the level of a substantial limitation of a major life activity. *See Coons*, 383

28  F.3d at 886 ("Although the doctor states that Coons suffers from various physical and mental

- 11 -

1  impairments, and that Coons received treatment for some of those impairments, there is no

2  allegation that any of the treated impairments substantially limited any major life activity.").

3  Nor has Plaintiff submitted evidence to show that the records are admissible.

4        With respect to Plaintiff's argument that he was "regarded" as disabled, Plaintiff cites

5  emails transmitted by one of Defendant's human resources employees with "ADA

6  Accommodation" in the subject line. *See* Dkt. #128-5 at 7. The informal mention of the

7  "ADA" or an "Accommodation" is insufficient evidence that Defendant regarded Plaintiff

8  as having an impairment that substantially limited a major life activity. *See E.E.O.C. v.*

9  *United Parcel Service, Inc.*, 306 F.3d 794, 805 (9th Cir. 2002) ("Casual references to

10  'disability' . . . do not support a finding that the company regarded [an employee] as

11  disabled."). The emails suggest that Defendant was attempting to accommodate Plaintiff, but

12  efforts to accommodate an employee do not show that the employer regards the employee

13  as disabled. *See Thornton v. McClatchy Newspapers, Inc.*, 261 F.3d 789, 798 (9th Cir. 2001)

14  ("when an employer takes steps to accommodate an employee's restrictions, it is not thereby

15  conceding that . . . it regards the employee as disabled."), *clarified in other respects by*, 292

16  F.3d 1045 (9th Cir. 2002).

17        Considering these arguments, the Court concludes that Plaintiff has failed to present

18  admissible evidence from which a reasonable jury could conclude that he is disabled within

19  the meaning of the ADA.

20      **B.    Causation.**

21        Even if Plaintiff could prove that he has an ADA disability, he could recover for an

22  ADA violation only by presenting evidence that he was terminated because of the disability.

23  *See Sanders v. Arneson Products, Inc.*, 91 F.3d 1351, 1353 (9th Cir. 1996) ("To state a *prima*

24  *facie* case under the ADA, a plaintiff must prove that he is a qualified individual with a

25  disability who suffered an adverse employment action because of his disability."). As noted

26  in the earlier discussion of Plaintiff's FMLA claim, Plaintiff has failed to create a triable

27  issue of fact as to whether he was fired because of health issues. Among other significant

28  facts, Plaintiff admits that the senior manager who fired him did not know about his illness

1    or his use of FMLA leave.  *See* Dkt. #127 ¶23.  Plaintiff therefore cannot show that he was

2    terminated because of an ADA disability.  Summary judgment is warranted on this ground

3    as well.[8]

4    **V.      Plaintiff's Motions.**

5          Almost one month after Defendant had filed its reply in support of summary

6    judgment, Plaintiff filed a motion to supplement his response with the bare declaration that

7    "all of the evidence and information" in his response is "true and correct to the best of my

8    knowledge."  Dkt. #143.  This attempt is too late and too broad.

9          Following the filing of Defendant's motion for summary judgment, the Court entered

10   an order that instructed Plaintiff on how to respond to the motion.  Dkt. #111.  The order

11   advised Plaintiff that he must comply with Rule 56 of the Federal Rules of Civil Procedure,

12   which in turn notes that parties opposing summary judgment "must – by affidavits or as

13   otherwise provided in this rule – set out specific facts showing a genuine issue for trial."

14   Fed. R. Civ. P. 56(e)(2).  The Court further advised Plaintiff that he "must set out specific

15   facts in declarations, depositions, answers to interrogatories, or authenticated documents, as

16   provided in Rule 56(e), that contradict facts shown in the Defendants' declarations and

17   documents and show there is a genuine issue of material fact for trial."  Dkt. #111 at 3.  The

18   order then warned: "If you do not submit your own evidence in opposition, summary

19   judgment, if appropriate, may be entered against you."  *Id*.

20         Plaintiff was then afforded sufficient time to comply with the Rule 56 and the Court's

21   order.  In addition to the time allotted for briefing summary judgment motions, the Court

22   granted Plaintiff's request for an extension of time to file his response.  Dkt. #117.  Plaintiff's

23

24         [8] Defendant asks the Court to issue two rulings with respect to damages: that

25   Plaintiff's lost wages and benefits are "cut off" as a matter of law by Plaintiff's current
     incarceration and criminal charges, as well as by Defendant's discovery of Plaintiff's prior

26   criminal convictions, and that Plaintiff cannot establish the requisite intent necessary for

27   punitive damages.  Dkt. #99.  Because the Court concludes that Defendant is entitled to
     summary judgment on Plaintiff's FMLA and ADA claims, it need not resolve these issues.

28

1    response was due on January 12, 2008. *Id.* Defendant asks the Court to grant its motion for

2    summary judgment on the ground that Plaintiff failed to file a timely reply, noting that the

3    reply was not delivered for filing until January 16, 2008, after the date set by the Court. Dkt.

4    #134 at 6 n.1. Because Plaintiff is proceeding pro se, the Court will not grant Defendant's

5    motion on this basis. The Court does note, however, that Plaintiff had sufficient time to

6    comply with Rule 56 and the Court's order directing him to submit admissible evidence.

7           Moreover, Plaintiff's current request is to treat his entire response to Defendant's

8    motion – some 59 pages of written material and more than 800 pages of exhibits – as a single

9    sworn declaration. Dkt. #143. Such a declaration would clearly be improper under Rule

10   56(e), which requires affidavits "made on personal knowledge, set[ting] out facts that would

11   be admissible in evidence, and show[ing] that the affiant is competent to testify on the

12   matters stated." Fed. R. Civ. P. 56(e). Much of the material submitted in Plaintiff's response

13   could not be known by him personally. For example, Plaintiff cannot authenticate the

14   numerous medical documents he has submitted, nor render them admissible, merely by

15   asserting that "they are true and correct to the best of my knowledge." Dkt. #143. Plaintiff's

16   response also contains statements allegedly made by others, assertions about what others

17   thought, or assertions about why others took particular actions – matters on which Plaintiff

18   clearly lacks personal knowledge or, at least, for which he provides no foundation. The

19   Ninth Circuit has held that "[c]onclusory affidavits and affidavits that do not affirmatively

20   show personal knowledge of 'specific facts' are insufficient [to withstand summary

21   judgment]." *Long v. Bureau of Economic Analysis*, 646 F.2d 1310, 1321 (9th Cir. 1981),

22   *vacated on other grounds, Bureau of Economic Analysis v. Long*, 454 U.S. 934 (1981); *see*

23   *also Agricultural Mgt. Dev. Inc. v. National City Bank*, No. 1:02-CV-11, 2003 WL 21919184

24   at *5 (N.D. Ind. 2003) (blanket assertions of personal knowledge are insufficient under Rule

25   56(e)) (collecting cases).

26          The Court recognizes the challenges confronted by pro se parties, but the Court

27   specifically advised Plaintiff of the need to submit a timely response based on admissible

28   evidence. Dkt. #111. Defendant has now relied on Plaintiff's response in crafting its reply

- 14 -

1   and submitting final arguments.  Plaintiff's request to transform all he has submitted into a

2   single declaration is untimely, sweeps too broadly, and does not comply with the requirement

3   of Rule 56.  Plaintiff's motion will therefore be denied.

4          Plaintiff has filed a motion for reconsideration of Magistrate Judge Marshall's order

5   denying Plaintiff's request to file a supplemental response to Defendant's motion for

6   summary judgment.  Dkt. ##140, 145.  The motion for reconsideration contains some ten

7   pages of additional arguments and attaches 167 pages of documents, mostly cases and other

8   legal materials. Dkt. #145.  This attempted supplementation is untimely.  The Court will not

9   reverse Judge Marshall's decision.

10         Plaintiff has filed yet another motion asking the Court to declare that his responses to

11  a defense discovery request are timely.  Dkt. #146.  Plaintiff does not attach the responses

12  or provide other evidence to support his assertion that they were not delivered due to a jail

13  error.  In any event, because the Court has not relied on the lack of responses in this ruling,

14  the Court will deny Plaintiff's motion as moot.

15  **IT IS ORDERED:**

16     1.     Defendant's motion for summary judgment (Dkt. #99) is **granted**.

17     2.     Plaintiff's other motions (Dkt. ##143, 145, 146) are **denied**.

18     3.     The Clerk is directed to **terminate** this action.

19  DATED this 4th day of April, 2008.

David G. Campbell
United States District Judge

- 15 -